## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

| | | |
|---|---|---|
| **MONICA JEFFRIES** | ) | |
| *Estate Next of Kin* | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action: 8:15-CV-3480** |
| | ) | **(RWT)** |
| **vs.** | ) | |
| | ) | |
| **BOSTON SCIENTIFIC** | ) | |
| **CORPORATION, ET AL** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT BOSTON SCIENTIFIC CORPORATION'S
## <u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

## MEMORANDUM OF LAW

Boston Scientific Corporation[1] (hereinafter "BSC") submits the following Memorandum of Law in support of its Motion to Dismiss.

## I.   INTRODUCTION

This is a product liability case brought by Plaintiff Monica Jeffries ("Plaintiff") to recover damages for injuries she allegedly incurred after she was implanted with a "Greenfield vena cava filter," (hereinafter "Greenfield IVC filter" or "device at issue"), on an unknown date prior to March 2004 at an unidentified location. Compl. at ¶¶ 7-9.  Plaintiff avers the Greenfield IVC filter "was defective and unreasonably dangerous," which caused "serious ongoing physical, emotional, and economic damages, heart issues, migration, and perforation." *Id*. at ¶¶ 7, 9. Devoid of any factual support, Plaintiff's Complaint alleges, only in the most conclusory manner, six causes of action: (1) negligence, (2) strict liability–failure to warn; (3) strict liability–design defect; (4) strict liability–manufacturing defect; (5) breach of implied warranty of merchantability; and (6) negligent misrepresentation. *Id*. at ¶¶ 104-60.

BSC respectfully requests that this Honorable Court dismiss Plaintiff's Complaint for four independent reasons: (1)  this court lacks personal jurisdiction over BSC with respect to Plaintiff's causes of action; (2) Plaintiff fails to plead sufficient facts under Rule 8 to plausibly support all her causes of action; (3) this Court lacks subject matter jurisdiction over Plaintiff's loss of consortium claim; and (4) Plaintiff fails to plead malice with specificity for her punitive damages claim.

---

[1] Plaintiff has named two different perceived Boston Scientific Corporation entities; however, both are misnomers and neither are actual, legal, corporate entities.  The correct name is Boston Scientific Corporation, as set forth in the Disclosure of Corporate Interest filed on January 25, 2016. *See e.g.*, *U.S. V. A.H. Fischer Lumber Co.*, 162 F.2d 872, 874 (4th Cir. 1947); *Murphy v. Adams*, 2013 WL 791191 at *1 fn. 1 (D. Md. March 1, 2013). Ray Elliott is no longer the CEO of Boston Scientific Corporation and has not been the CEO since late 2011.

First, Plaintiff's Complaint fails to allege the minimum contacts necessary to establish general or specific personal jurisdiction in accordance with *Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945) and its progeny, including *Goodyear Dunlop Tires Operations*, *S.A. v. Brown*, 131 S. Ct. 2846 (2011) and *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). *International Shoe, Goodyear*, and *Daimler* require a showing of either general or specific jurisdiction over a non-resident defendant to establish personal jurisdiction, which Plaintiff fails to establish in this case. Plaintiff's Complaint does not allege sufficient facts to support a finding that BSC is "at home" in Maryland and subject to general jurisdiction in Maryland. Nor does it support a finding of specific jurisdiction because Plaintiff fails to allege that her causes of action arose from BSC's forum contacts. As a result, Plaintiff's entire Complaint must be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(2).

Second, Plaintiff's barebones and conclusory allegations for all her causes of action are insufficient under federal pleading standards announced by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) to plausibly support her legal theories. Plaintiff's Complaint lacks virtually any case-specific and context-specific facts, which renders her Complaint overly generic. Plaintiff's Complaint does not provide this Court with sufficient factual allegations for this Court to infer that Plaintiff's broad-sweeping allegations are more than mere possibilities. As a result, Plaintiff's causes of action against BSC should be dismissed in their entirety, with prejudice, as a matter of law, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Third, this Court lacks subject matter jurisdiction over Plaintiff's loss of consortium claim because Plaintiff does not have standing to assert a loss of consortium claim in this case. "To meet the constitutional minimum for standing, [a] plaintiff must allege personal injury fairly

traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Friends of the Earth*, 204 F.3d 149, 154 (4th Cir. 2000) (quotations omitted). "This formula includes three elements: (1) injury in fact; (2) traceability; and (3) redressability." *Id.* Here, Plaintiff's grandchildren are the only people with alleged injuries under Plaintiff's loss of consortium theory. Plaintiff's grandchildren are not parties to this case, and they do not assert loss of consortium claims on their own. Plaintiff cannot assert loss of consortium claims in their stead because Plaintiff has not alleged that she experienced an injury in fact with respect to her loss of consortium claim. Additionally, Maryland law does not recognize or redress injuries to the caregiver relationship for loss of consortium claims, which is the injury alleged under Plaintiff's loss of consortium theory. Because Plaintiff lacks standing to assert her loss of consortium claim, this Court should dismiss her claim, pursuant to Federal Rule of Civil Procedure 12(b)(1).

Finally, Plaintiff's punitive damages claim fails to set forth specific facts demonstrating BSC's alleged malice, as required by law, and it should be dismissed as a result of this failure.

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss for Lack of Personal Jurisdiction.

"When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 59-60 (4th Cir. 1993). "In deciding whether the plaintiff has made the requisite showing, the [C]ourt must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 396 (4th Cir. 2003). However, the Court need not "credit conclusory allegations or draw farfetched inferences" when deciding the jurisdictional issue. *Tharp v.*

3

*Colao*, No. WDQ-11-3202, 2012 WL 1999484, at *1 (D. Md. June 1, 2012) (quoting *Masselli &*

*Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000)).

**B.     Motion to Dismiss for Lack of Standing.**

"Standing [] is a fundamental component of a court's subject-matter jurisdiction." *Miller*

*v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 994 (D. Md. 2002). "As such, defendants may aptly

challenge its existence by a motion to dismiss for lack of jurisdiction over the subject matter,

pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Id.* "The plaintiff has the burden of

proving that subject matter jurisdiction exists." *Evans v. BF Perkins Div. of Standex Intern.*

*Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R. Co. v.*

*United States*, 945 F.2d 765, 768 (4th Cir. 1991)). "When a defendant challenges subject matter

jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere

evidence on the issue, and may consider evidence outside the pleadings without converting the

proceeding to one for summary judgment.'" *Id.* "The district court should grant the Rule 12(b)(1)

motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party

is entitled to prevail as a matter of law.'" *Id.*

"The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute

to render judicial resolution appropriate." *Friends of the Earth v. Gaston Copper Recycling*, 204

F.3d 149, 153 (4th Cir. 2000). "There are three components of constitutional standing: (1) the

plaintiff must allege that he or she suffered an actual or threatened injury that is not conjectural

or hypothetical, (2) the injury must be fairly traceable to the challenged conduct; and (3) a

favorable decision must be likely to redress the injury." *Miller v. Brown*, 462 F.3d 312, 316 (4th

Cir. 2006).

**C.     Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted.**

A defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must state "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Mere conclusions couched as factual allegations are not sufficient to state a cause of action. *Papasan v. Allain,* 478 U.S. 265, 286 (1986).

In *Twombly*, the Supreme Court clarified Rule 8(a)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and held that a plaintiff is required to allege sufficient facts to raise a right to relief above the speculative level. 550 U.S. at 555. The Court further held that a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." *Id.* The Court stated a pleading must allege "enough facts" to "nudge[] [the] claim[s] across the line from conceivable to plausible." *Id.* at 570; *see also McCleary-Evans v. Maryland Dept. of Transp.*, 780 F.3d 582, 587 (4th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added).[2] Under *Iqbal*'s

---

[2] When a complaint fails to "possess enough heft to show that the pleader is entitled to relief," *Twombly*, 550 U.S. at 557, "the basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558. A court thus should insist upon specificity in

5

framework, the court should excise conclusory allegations and rely only upon well-pleaded facts in determining whether the plaintiff's allegations plausibly suggest an entitlement to relief. *See Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of respondent's allegations . . . that disentitles them to the presumption of truth.").

"In resolving a motion pursuant to Rule 12(b)(6) [], a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment. Fed. R. Civ. P. 12(d)." *Occupy Columbia, v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). "A court may, however, consider a 'written instrument' attached as an exhibit to a pleading, *see* Fed. R. Civ. P. 10(c), 'as well as [documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Id.* (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Rule 10(c) states, "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

## III.   ARGUMENT

### A.   Plaintiff's Complaint Does Not Allege Facts to Support Personal Jurisdiction in Maryland.

Maryland's long-arm statute allows the exercise of personal jurisdiction to the fullest extent permissible under the United States Constitution. Therefore, the personal jurisdiction analysis hinges on whether the exercise of jurisdiction comports with the Due Process Clause of the Constitution. *Carefirst*, 334 F.3d at 396-97. The Constitutional due process inquiry for exercising personal jurisdiction consists of a two-prong analysis. First, there must be minimum contacts such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (*quoting Milliken v. Meyer*, 311 U.S. 457, 463

---

pleading before allowing a potentially massive discovery to proceed. *Id.*  *Twombly* thoughtfully highlights that discovery is for finding "details" of a case, not for trying to create a case. *Id.* at 560 n.6. Accordingly, it is critical at the pleading stage to require a heightened "plausibility standard," lest discovery abuse run unchecked. *Id.* at 559.

6

(1940)). Second, the defendant's minimum contacts must be sufficient to establish general or specific personal jurisdiction. *Carefirst*, 334 F.3d at 397. Here, Plaintiff's Complaint fails to allege that BSC had sufficient contacts with Maryland to warrant a finding of general or specific jurisdiction.

1.    <u>This Court Lacks General Jurisdiction Over BSC.</u>

This Court does not have general jurisdiction over BSC because BSC is not at home in Maryland. Specifically, BSC is neither incorporated in Maryland nor does it have its principal there, and Plaintiff has failed to plead facts suggesting an exceptional case for general jurisdiction over BSC in Maryland. The Due Process Clause limits the exercise of general jurisdiction over non-resident corporations to instances where the defendant's "affiliations with the [forum] state are so 'continuous and systematic' as to render [it] essentially at home in the forum state." 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Id*. at 760.

The Supreme Court clarified the standard for general jurisdiction in its recent decision in *Daimler AG v. Bauman*. In *Daimler*, Argentine residents brought suit against Daimler, a German public stock company, for alleged human rights violations by its Argentine subsidiary in Argentina. *Daimler*, 134 S. Ct. at 750-51. The plaintiffs argued that California courts could exercise general jurisdiction over Daimler "predicated on the California contacts of Mercedes-Benz USA, LLC (MBUSA), a subsidiary of Daimler incorporated in Delaware with its principal place of business in New Jersey." *Id*. at 751. The record established that MBUSA was the "the largest supplier of luxury vehicles to the California market," that "over 10% of all sales of new vehicles in the United States take place in California," and that "MBUSA's California sales account[ed] for 2.4% of Daimler's worldwide sales." *Id*. at 752. In addition to billions of dollars

7

of sales in California, MBUSA also had multiple offices and facilities in the state, including a regional headquarters. *Id.* at 766-67 (Sotomayor J., concurring). Nevertheless, despite these significant and continuous business contacts, the Court held that California courts lacked general jurisdiction over Daimler.

The Supreme Court concluded that the question of general jurisdiction is not whether a corporation's "in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially <u>at home</u> in the forum State.'" *Id.* at 761 (quoting *Goodyear*, 131 S. Ct. at 2851) (emphasis added). Applying this standard, the Court found that, "[e]ven if we were to assume that MBUSA is at home in California, and further to assume MBUSA's contacts are imputable to Daimler, there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id.* at 760.

The Supreme Court only identified one exceptional case, *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952), where the defendant's forum contacts subjected it to general jurisdiction outside its principal place of business and place of incorporation. In *Perkins*, the Supreme Court held that Ohio Courts had general jurisdiction over a nonresident Philippine corporation even though the corporation was incorporated in the Philippines and had its principal place of business there. The Philippine corporation's president was forced to conduct business in Ohio because Japanese wartime occupation of the Philippines halted all company operations in the Philippines. The Supreme Court observed that because business activity in the Philippines was suspended, "Ohio was the corporation's principal, if temporary, place of business." *Daimler*, 134 S. Ct. at 756 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780, n. 11, (1984)).

Here, Plaintiff fails to allege sufficient facts to establish that BSC is at home in Maryland. BSC is a Delaware corporation with its principal place of business in Massachusetts.[3] Plaintiff's Complaint even identifies Massachusetts as BSC's principal place of business. Compl. at ¶ 4. Therefore, under the Supreme Court's paradigm basis (place of incorporation or principal place of business) for general jurisdiction, BSC cannot be considered at home in Maryland.

Because BSC is not at home in Maryland under the Supreme Court's paradigm basis for general jurisdiction, Plaintiff's only avenue for establishing general jurisdiction over BSC is to plead facts showing an exceptional case for general jurisdiction, which Plaintiff fails to do here. Plaintiff only alleges, in conclusory fashion, that BSC engaged in regular business activity in Maryland. Compl. at ¶ 3 ("At all times relevant hereto, defendant[] Boston Scientific was or has been engaged in business in Maryland, and has conduct[ed] substantial business activity in Maryland. Defendants also carried on solicitations or service activities in the State of Maryland."). She also alleges that BSC manufactured and sold products that were implanted in patients in Maryland. *Id*. at ¶ 4 ("[BSC] designed, set specifications, manufactur[ed], prepared, compounded, assemble[ed], processed, marketed, distributed, and sold the Greenfield IVC filter to be implanted in patients throughout the United States, including Maryland.").

Plaintiff's generic statements regarding BSC's business activity do not establish an exceptional case for general jurisdiction in Maryland. In fact, the Supreme Court in *Daimler*, specifically rejected that such a rationale could establish general personal jurisdiction. *Daimler*, 134 S. Ct., at 760-61 (citing *Goodyear*, 131 S. Ct. at 2851).

---

[3] Plaintiff's Complaint alleges that "Boston Scientific ET AL is a corporation duly organized and existing under the laws of the state of Maryland." Compl. at ¶ 3. BSC does not interpret this statement to allege that BSC is incorporated in Maryland. To the extent Plaintiff's Compliant alleges that BSC is incorporated in Maryland, BSC responds that this Court would lack diversity subject matter jurisdiction for failing to satisfy 28 U.S.C. § 1332(a)(1).

> Plaintiffs would have us look beyond the exemplar bases *Goodyear* identified, and approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.' . . . <u>That formulation, we hold, is unacceptably grasping</u>.

*Id.* (emphasis added). Unlike *Perkins*, BSC's contacts with Maryland do not establish Maryland as BSC's temporary principal place of business. Moreover, Plaintiff has not alleged facts to support an exceptional case of general jurisdiction because BSC's alleged contacts with Maryland are not so pervasive to render BSC at home in Maryland as opposed to any other state. Accordingly, this Court cannot exercise general jurisdiction over BSC in this case.

  2. <u>Plaintiff Has Not Alleged Facts to Support Specific Jurisdiction in Maryland.</u>

  Plaintiff's Complaint does not allege that <u>her</u> causes of action arose from BSC's contacts with Maryland, and as a result, this Court does not have specific jurisdiction over BSC with respect to her causes of action. "If the defendant's contacts with the State are [] the basis for the suit, those contacts may establish specific jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants*, 293 F.3d 707, 712 (4th Cir. 2002).

> [T]he Court may exercise specific jurisdiction if (1) the defendant purposely directed its activities toward residents of Maryland or purposely availed itself of the privilege of conducting activities in the state; (2) <u>the plaintiffs cause of action arises out of or results from the defendant's forum-related contacts</u>; and (3) the forum's exercise of personal jurisdiction in the case is reasonable, that is, consistent with 'traditional notions of fair play and substantial justice.'

*Cole-Tuve, Inc. v. Am. Machine Tools Corp.*, 342 F. Supp. 2d 362, 366 (D. Md. 2004) (emphasis added) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985); *see also ALS Scan, Inc.*, 293 F.3d at 712.

  Here, there are no case-specific facts in Plaintiff's Complaint to support a reasonable inference that Plaintiff's causes of action arose from BSC's Maryland contacts. And Plaintiff

does not allege any facts supporting a nexus between BSC's Maryland contacts and Plaintiff's product liability/fraud/contract causes of action. Plaintiff, for example, does not allege that she received the Greenfield IVC filter in Maryland nor does she allege any facts supporting an inference that her surgery occurred in Maryland. *See* Compl. at ¶ 7 ("Plaintiff brings this case for serious injuries suffered as a result of a surgically implanted medical device, known as the 'Greenfield IVC Filter.'"). Moreover, Plaintiff fails to identify the hospital where her device was implanted, the doctor who implanted her device, and/or the BSC employee that made alleged negligent misrepresentations to her, all facts upon which this Court could make reasonable inferences in determining personal jurisdiction.

The only allegation in Plaintiff's Complaint regarding her contacts with Maryland is that Maryland is her place of residence. Compl. at ¶ 2. However, this allegation alone is not enough for the Court to reasonably infer that Plaintiff's causes of action arose from BSC's Maryland contacts. It is fairly common for patients to travel extensive distances, including outside their state of residence, for surgical procedures so residence alone is not sufficient to determine where the device was implanted. In this case, Plaintiff's residence is only minutes away from Alexandria, Virginia and Washington D.C., which are major metropolitan areas with hospitals capable of performing Plaintiff's implantation surgery. *See* Compl. at ¶ 1. Because Plaintiff does not allege facts supporting an inference that her causes of action arose from BSC's forum contacts, this Court does not have specific jurisdiction over Plaintiff's causes of action, and Plaintiff's entire Complaint must be dismissed.

**B.    Plaintiff's Complaint Fails to State Claims Upon Which Relief can be Granted Because Plaintiff's Complaint Only Contains Conclusory Allegations Unsupported by Case-specific and Contextual Facts.**

Plaintiff's Complaint fails to set forth plausible causes of action as required by *Twombly* because Plaintiff's Complaint lacks case-specific and contextual facts. While Plaintiff's

Complaint need not be pled with specificity, Plaintiff must plead enough facts for the Court to infer that Plaintiff's causes of action are plausible, and not merely possible. Because Plaintiff's Complaint lacks case-specific facts setting forth any context for Plaintiff's causes of action, Plaintiff's Complaint is rendered overly-generic and plagued with recitations of legal elements.

Further, Plaintiff's Complaint contains virtually no case-specific facts supporting her allegations that she received one of BSC's vena cava filter devices. Plaintiff only alleges that she received a "Greenfield IVC filter" prior to March 2004, but Plaintiff does not state when the device was implanted in her, who implanted the device in her, or where the implantation procedure took place. Moreover, Plaintiff does not allege any device-identifying information in the Complaint such as: the device reference number, the device lot number, or the date her device was cleared by the FDA. Her Complaint references two different generations of the Greenfield IVC filter with the trade names of "Stainless Steel Greenfield Vena Cava Filter with 12F Introducer System" and "Greenfield Titanium Vena Cava Filter," but Plaintiff does not even allege that she received one of these versions of the device. *See* Compl. at ¶ 6. Because Plaintiff omitted all key facts regarding the device at issue and the implantation procedure, it is unclear whether Plaintiff even received one of BSC's vena cava filter devices and whether Plaintiff performed the requisite pre-suit investigation required by Rule 11(b) to determine product identification.

1.   <u>Strict Product Liability – Design Defect and Manufacturing Defect</u>

Plaintiff's Complaint fails to set forth facts supporting her strict liability design defect and manufacturing defect causes of action. In Maryland,[4] to plead strict liability design defect

---

[4] Under the "Prayer for Damages" section of Plaintiff's Complaint, Plaintiff specifically requests relief "pursuant to the laws of the State of Maryland." Accordingly, BSC has analyzed Plaintiff's causes of action under Maryland law.

and/or manufacturing defect causes of action, Plaintiff must allege facts supporting the following elements:

> (1) the product was in a defective condition at the time that it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition.

*Phipps v. General Motors Corp.*, 363 A. 2d 955, 958 (Md. Ct. App. 1976)

> a.    *Plaintiff's Complaint Fails to Articulate a Manufacturing Defect.*

Plaintiff's Complaint fails to set forth facts supporting her strict liability – manufacturing defect cause of action (Fourth Cause of Action). To satisfy the pleading requirements with respect to the first element, the plaintiff needs to allege facts demonstrating that the product does not conform to the manufacturer's own specifications. *See Singleton v. Manitowoc Co.*, 727 F. Supp. 217 (D. Md. 1989).

Here, Plaintiff merely states in a conclusory manner that her product "contained a condition which defendants did not intend" instead of alleging facts demonstrating how her product deviated from certain manufacturing specifications. Compl. at ¶ 136 ("The Greenfield filter implanted in plaintiff contained a condition which defendants did not intend at the time it left defendants control and possession"). Plaintiff does not set forth <u>any facts</u> regarding the manufacturing specifications for the product or how her product deviated from those specifications to create an unintended "manufacturing defect." Because Plaintiff simply recites the elements of the cause of action with no case-specific facts to support her allegations, Plaintiff's allegations are nothing more than bald statements with no factual substance. *See Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 548 (D. Md. 1997) ("[P]laintiffs allege only that defendant is liable for placing into the stream of commerce cigarettes that contain a 'manufacturing flaw.' This allegation amounts to no more than just such a bald

13

statement."). Plaintiff's manufacturing defect cause of action should be dismissed as a result of her pleading failures.

b.   *Plaintiff does not allege a defect in the design of the device.*

Plaintiff's design defect cause of action (Third Cause of Action), similar to Plaintiff's manufacturing defect cause of action, also fails because Plaintiff fails to articulate a "design defect" in her device that caused her injuries. Plaintiff's cause of action states, in conclusory fashion, that the device at issue "was defective in design because it failed to perform as safely as persons who ordinary[ly] use the product would have expected at the time of use." Compl. at ¶ 129. However, Plaintiff does not allege what aspects of her device rendered her device defectively designed and how those design flaws caused her injuries.

At best, Plaintiff's Complaint articulates an alleged defect with respect to the "Stainless Steel Greenfield Vena Cava Filter with 12F Introducer System" with product codes of M001505010, however, Plaintiff fails to connect this alleged defect and this alleged device to her case.  In paragraphs 18-19 of Plaintiff's Complaint, Plaintiff cites reports of "detachment at the bond between the carrier capsule and the outer sheath of the filter's delivery system <u>during the implant procedure</u>" for the "Stainless Steel Greenfield Vena Cava Filter with 12F Introducer System" with a product code of M001505010. Compl. at ¶ 18 (emphasis added). She further alleges, "[i]f the carrier capsule should detach during an implantation procedure, there is a risk of cardiac and pulmonary embolization." Compl. at ¶ 19. While Plaintiff asserts these allegations, Plaintiff fails to connect these facts to her case. Plaintiff does not allege that her device had the product code of M001505010 nor does she allege that she even received the Stainless Steel Greenfield Vena Cava Filter with 12F Introducer System. Further, Plaintiff does not allege that an issue with the carrier capsule in her device caused her injuries during her implantation

14

procedure. Because Plaintiff has not alleged facts articulating a defect in <u>her device</u> that caused <u>her injuries</u>, Plaintiff's design defect cause of action fails and must be dismissed.

### 2. Strict Product Liability – Failure to Warn

Plaintiff's failure to warn cause of action (Second Cause of Action) does not set forth a plausible theory of liability, and as a result, it should be dismissed. In Maryland, "[i]f the warnings or instructions on a product are adequate, 'the product is not defective, and the plaintiff cannot recover under a theory of strict liability in tort.'" *Stanley v. Central Garden and Pet Corp.*, 891 F. Supp. 2d 757, 763 (D. Md. 2012) (quoting *Ellsworth v. Sherne Lingerie, Inc.*, 495 A.2d 348, 356 n. 12 (1985)). "A warning is adequate if it 'explains the risk which allegedly caused the plaintiff's injury.'" *Id.* (quoting *Ames v. Apothecon, Inc.,* 431 F.Supp.2d 566, 572 (D. Md.2006)). "But if a warning is 'vague or otherwise difficult to understand' it 'shall not generally have the effect of barring a product liability claim when those warnings go unheeded.'" *Id.* (citing *Lightolier, A Div. of Genlyte Thomas Grp. LLC v. Hoon*, 876 A.2d 100, 111 (Md. Ct. App. 2005)).

Here, the risk of Plaintiff's alleged injuries are specifically warned about by BSC. Plaintiff alleges that she experienced migration of her Greenfield IVC Device and perforation of her vena cava by her Greenfield IVC Device. Compl. at ¶ 42. Yet, Plaintiff's own exhibit to her Complaint demonstrates that these risks were warned of by BSC. Plaintiff attached a copy of the "indications, safety, and warnings" for the Greenfield Vena Cava Filter to her Complaint. Attachment 2, Doc. 1-2, at 2. This document specifically states, "[p]otential adverse events associated with the use of the vena cava filters include the following: . . . Movement or migration of the Filter . . . . Perforation of the vena cava, adjacent blood vessels or organ by one or more hooks." *Id.* at 5. Because BSC warned of the risks of Plaintiff's alleged injuries, Plaintiff's failure to warn cause of action fails. *See, e.g.*, *Stanley*, 891 F. Supp. 2d at 764.

15

Additionally, Plaintiff fails to otherwise state a claim upon which relief may be granted because Plaintiff's failure to warn cause of action is full of conclusory allegations. Plaintiff's Complaint, for example, alleges that BSC had a duty to warn of all "risks of harm associated with the use of the device" and a duty to warn of "dangers and proper safety instructions" for the devices. Compl. at ¶ 118. These allegations are devoid of facts and overly vague, rendering Plaintiff's allegations conclusory in nature. BSC is not required to warn of every alleged "risk" or "danger" associated with its device. BSC's duty is only to give a "reasonable warning, not the best possible one." *Nolan v. Dillon*, 276 A.2d 36, 40 (1971).  Further, BSC only owed a duty to warn Plaintiff's physician of alleged "risks" and "dangers" associated with the device at issue. *Brooks v. Medtronic, Inc.,* 750 F.2d 1227 (4th Cir. 1984). Plaintiff's Complaint does not clearly plead that BSC failed to warn Plaintiff's physician regarding the alleged "risks" and "dangers" associated with the device. *See* Compl. at ¶ 119. Because Plaintiff fails to allege facts demonstrating how risks causing her injuries were unwarned of by BSC, Plaintiff's failure to warn cause of action fails.

### 3.    Negligence

Plaintiff's negligence cause of action (First Cause of Action) also fails for the same reasons that her strict liability design defect, manufacturing defect, and failure to warn causes of action fail. Plaintiff fails to allege facts regarding the "defects" in her device's manufacture and design, and Plaintiff fails to allege warnings that were not given to her doctor.

Here again, Plaintiff's negligence cause of action recites generic conclusory statements. Plaintiff, for example, lists a myriad of duties BSC had with respect to the Greenfield IVC filter. Compl. at ¶ 107.("'Defendant had a duty to exercise reasonable and prudent care' in the development, testing, design, manufacture, marketing, labeling, promotion, distribution and sale of the filter so as to avoid exposing others to foreseeable and unreasonable risks of harm.") But

Plaintiff does not allege facts as to how BSC breached these duties, what these duties even entailed, what harm resulted from any single breach of duty etc. Accordingly, Plaintiff's negligence cause of action fails to state a claim upon which relief can be granted.

### 4.    Negligent Misrepresentation

Plaintiff fails to plead a negligent misrepresentation cause of action (Sixth Cause of Action) because Plaintiff fails to allege a legal duty owed to her by BSC. "To state a claim for negligent misrepresentation, a plaintiff must allege a legal duty to provide the plaintiff with accurate information." *Smith v. St. Jude Med. Cardiac Rhythm Mgmt. Div.*, No. CCB-12-1746, 2013 WL 1104427, at *5 (D. Md. March 13, 2013) (citing *Lloyd v. Gen. Motors Corp.,* 397 Md. 108, 136 (2007)). "Under FDA regulation and Maryland law, a device manufacturer owes no duty to provide information or warnings about a device to patients or consumers." *Id.* (citing *Lee v. Baxter Healthcare Corp.*, 721 F. Supp. 89, 94–95 (D. Md. 1989)). "Instead, the duty is owed to the prescribing physician, to allow the physician to provide case specific information about the potential risks and benefits of proposed treatment to his or her patients." *Id.*

Here, Plaintiff's Complaint does not articulate a duty owed to Plaintiff with respect to her negligent misrepresentation cause of action. *See* Compl. at ¶¶ 150-60. And under Maryland law, medical device manufacturers only owe a legal duty to provide information or warnings about a device to prescribing physicians, and not patients or consumers.

Even if some duty did exist to Plaintiff, which it does not, Plaintiff fails to set forth any factual allegations regarding the misrepresentations that she relied on, the person who made those misrepresentations, and when those misrepresentations were made. Accordingly, Plaintiff's negligent misrepresentation cause of action must be dismissed.

**C.    Plaintiff Fails to Plead a Cause of Action for Breach of Implied Warranty Because Plaintiff's Breach of Implied Warranty Cause of Action Is Barred by the Statute of Limitation.**

Plaintiff's Complaint fails to plead a cause of action for breach of implied warranty of merchantability (Fifth Cause of Action) because Plaintiff's cause of action is barred by the statute of limitations. Under Maryland law, breach of warranty claims must be filed within four years of the breach. MD. CODE ANN., COM. LAW. § 2-725(1). Further,

> [a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

*Id*. at § 2-725(2) (emphasis added).

Here, Plaintiff's Greenfield IVC filter was tendered "on or before March 2004." Compl. at ¶ 9. Plaintiff did not file her case until November 16, 2015. Dkt. #1. According to Plaintiff's Complaint, at least eleven years have elapsed from the time Plaintiff received the Greenfield IVC filter to the time Plaintiff filed her case. As a result, Plaintiff's breach of implied warranty cause of action is barred by the statute of limitation. *See Miller v. Bristol-Myers Squibb*, 121 F. Supp. 2d 831, 838-39 (D. Md. 2000) (granting summary judgment for plaintiff's breach of implied and express warranty claims because Plaintiff waited over four years from the time she received her breast implants to file her case). Because Plaintiff's breach of implied warranty of merchantability cause of action is untimely, it should be dismissed with prejudice.

**D.    Plaintiff Does Not Have Standing to Assert a Loss of Consortium Claim.**

Plaintiff's loss of consortium claim must be dismissed because Plaintiff does not have standing to assert a loss of consortium claim on behalf of herself. Further, Plaintiff lacks standing to assert a loss of consortium claim on behalf of her granddaughters listed in paragraph 162 of Plaintiff's Complaint. "To meet the constitutional minimum for standing, '[a] plaintiff must

allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Friends of the Earth*, 204 F.3d at 154. "This formula includes three elements: (1) injury in fact; (2) traceability; and (3) redressability." *Id.*

Here, Plaintiff's loss of consortium claim fails for several reasons. First, Plaintiff has not experienced an injury in fact with respect to her loss of consortium claim. "The injury in fact prong requires that a plaintiff suffer an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent." *Id.* According to Plaintiff's Complaint, "all three of Plaintiff's grand[]daughters have been deprived of and suffered a loss of their grand-mother[']s love, companionship, society, solace, moral support and services, and childcare." Compl. at ¶ 163. The injuries alleged in Plaintiff's Complaint are alleged injuries to Plaintiff's grandchildren, and not Plaintiff herself. Plaintiff's grandchildren are not named in the caption, and they have not signed the Complaint indicating that they wish to pursue an action against BSC. Because Plaintiff does not allege an injury in fact with respect to her loss of consortium claim, she does not have standing to bring this claim.

Second, even if Plaintiff satisfied the injury in fact prong of the standing analysis, Plaintiff cannot establish a redressable claim under Maryland law because Plaintiff alleges injuries that are not compensable under Maryland law. "[T]he redressability prong entails that it must be likely, and not merely speculative, that a favorable decision will remedy the injury." *Friends of the Earth*, 204 F.3d at 154. Plaintiff's loss of consortium claim cannot be remedied because Plaintiff's Complaint alleges injuries to her caregiver relationship with her grandchildren as opposed to injuries to her spouse. "The law is clear in Maryland that a claim for loss of consortium is brought to recover for injury to the marital unit, *Deems v. Western Md. Ry. Co.,* 247 Md. 95, 231 A.2d 514 (1967), and is brought by both spouses for the injury to them

19

both . . . ." *Butcher v. Robertshaw Controls Co.*, 550 F. Supp. 692, 705 (D. Md. 1981) (emphasis added). BSC found no Maryland case law recognizing a loss of consortium claim for damages to the caregiver relationship, and it is unlikely that this Court could redress the alleged injuries in Plaintiff's loss of consortium claim. Because Plaintiff fails to plead an injury in fact and because plaintiff fails to plead a redressable injury, Plaintiff's loss of consortium claim fails and should be dismissed.[5]

### E.  Plaintiff Fails to State A Claim for Punitive Damages.

Plaintiff fails to state a claim for punitive damages because Plaintiff's conclusory allegations do not describe, in detail, how BSC acted with actual malice in this case. Under Maryland law, "a plaintiff seeking punitive damages for any tort must 'allege, in detail, facts that, if proven true, would support the conclusion that the act complained of was done with actual malice.'" *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 824-25 (D. Md. 2005) (quoting *Scott v. Jenkins,* 690 A.2d 1000, 1008 (Md. 1997)). To establish actual malice in product liability cases, a "plaintiff must prove (1) actual knowledge of the defect on the part of the defendant, and (2) the defendant's conscious or deliberate disregard of the foreseeable harm resulting from the defect." *See Owens-Illinois, Inc. v. Zenobia,* 325 Md. 420, 601 A.2d 633, 653 (1992).

Here, Plaintiff has not pled any specific facts that demonstrate BSC's conscious and deliberate disregard of the foreseeable harm associated with the product at issue.  Plaintiff only alleges, in conclusory fashion, that BSC engaged in "intentional, willful, knowing, fraudulent, malicious acts, [and] omissions," and that BSC "had knowledge of and [was] in possession of

---

[5] For reasons set forth in Section (III)(B-C) of this brief, Plaintiff's loss of consortium claim also fails because it is derivative of Plaintiff's primary causes of action, which  fail to state claims upon which relief may be granted.

evidence demonstrating that, the Greenfield filter was defective, [] unreasonably dangerous and had a substantially higher failure rate than did other similar devices on the market." Compl. at ¶ 165-66. But Plaintiff does not allege, for example, what knowledge or evidence BSC had of the alleged "defect" at the time of Plaintiff's implant (whenever that may have been) or how this evidence demonstrated that the device was defective.

Further, in paragraphs forty-six through fifty-two of Plaintiff's Complaint, Plaintiff fails to set forth allegations regarding "BSC's knowledge of failures with the device at issue," despite this section's title. These allegations again baldly assert legal conclusions with no facts regarding the Greenfield IVC filter. *See* Compl. at ¶ 46 ("[BSC was] aware and had knowledge of the fact that the Greenfield IVC Filter was defective and unreasonably dangerous and was causing injury and death to patients. . . ."). Perhaps Plaintiff's most fact-intensive allegation states: "[o]ver 921 adverse events were identified by the FDA through a warning issued on August 2010 regarding risks associated with IVC filters complications." Compl. at ¶ 48.  Yet, this allegation cannot be used to establish malice because it (1) only discusses IVC filters in general, (2) does not identify which "risks" were associated with the IVC filter and how BSC knew of these risks, and (3) alleges that these "risks" were only known in 2010, which was at least 6 years <u>after</u> Plaintiff's implantation surgery. Because plaintiff does not allege <u>specific facts</u> supporting her allegations that BSC acted with malice when designing, manufacturing, and warning about at the device at issue, Plaintiff's punitive damages claim should be dismissed. *See Brush Engineered Materials*, at 383 F. Supp. 2d at 825 (dismissing Plaintiff's claim for punitive damages because Plaintiff only generally alleged that defendant "knowingly manufactured and distributed harmful product" without specific factual allegations).

**IV.**     <u>**CONCLUSION**</u>

For the foregoing reasons, Boston Scientific Corporation respectfully requests that this Honorable Court enter an Order granting its Motion to Dismiss all of Plaintiff's causes of action and dismissing this action with prejudice.

Respectfully submitted,

SHOOK, HARDY & BACON, LLP

By:   /s/ Kenneth E. Chase

Kenneth E. Chase
Shook, Hardy & Bacon, LLP
1155 F Street NW, Suite 200
Washington, DC 20004
Telephone:  (202) 639-5606
Facsimile:  (202) 783-4211
Email: kchase@shb.com

*Attorneys for Defendant*
*Boston Scientific Corporation*
*And Boston Scientific / Ray Elliott CEO*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 29, 2016, the foregoing was electronically filed via the Court's

CM/ECF system, and a copy was sent by first-class mail on March 1, 2016 to:

Monica Jeffries
414 Winslow Road
Oxon Hills, MD 20715

By: <u>/s/ Kenneth E. Chase</u>
Kenneth E. Chase