**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | | |
|---|---|---|
| **MONICA JEFFRIES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action: 8:15-CV-3480 (RWT)** |
| **v.** | ) | |
| | ) | |
| **BOSTON SCIENTIFIC** | ) | |
| **CORPORATION, *ET AL.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**BOSTON SCIENTIFIC CORPORATION'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO AMEND HER COMPLAINT AND REQUEST TO SHIELD**
**PLAINTIFF'S MEDICAL RECORDS FROM PUBLIC EYE**

Boston Scientific Corporation ("BSC") files this Response in opposition to Plaintiff's Motion to Amend her Complaint (ECF No. 43). Despite having more than a year to cure defects with her Complaint, Plaintiff has failed to set forth plausible allegations to support viable causes of action in her proposed Second Amended Complaint. Accordingly, Plaintiff's proposed amendments are futile, and Plaintiff's Motion to Amend should be denied.

The Court has generously allowed Plaintiff to amend her Complaint twice before—once following its Order granting BSC's Motion to Dismiss without prejudice (ECF No. 22) and once after granting one of Plaintiff's previous Motions for Leave to Amend (ECF No. 39). Yet, even with these opportunities to address the Court's concerns and plead plausible causes of action, Plaintiff has failed to do so. Most recently, Plaintiff failed to even file an amended complaint following the Court's December 21, 2016 Order permitting her proposed amendments.

The Court has also twice warned Plaintiff that it was not inclined to accept her Complaint as currently pled because she did not plead plausible causes of action in compliance with Rule 8. Memorandum Opinion, ECF No. 21, at 5 ("It appears Jeffries simply filed her Complaint based

1

on a hunch. Such pure speculation fails to nudge her claims 'across the line form conceivable to plausible.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Order, ECF No. 39, at 2 ("A cursory review of her First Amended Complaint [ECF No. 23] and the voluminous supporting documentation she has provided thus far indicates that she has likely failed to address the deficiencies identified in the Court's Memorandum Opinion [ECF No. 21], and raises doubts as to whether she has alleged a colorable claim that she was, in fact, injured by the IVC Filter.").

Nevertheless, Plaintiff's latest proposed amended complaint, which is attached in redline as Exhibit 2 to her Motion to Amend (ECF No. 43-2), is almost word-for-word identical to her prior Complaints that the Court indicated it would reject. *Compare* ECF No. 43, ex. 2 *with* ECF Nos. 23 and 32-1. Her proposed Second Amended Complaint does not address the Court's concerns regarding Plaintiff's allegations of medical causation and the statute of limitations, nor does it address many of the defects that BSC raised in its Motion to Dismiss Plaintiff's Amended Complaint. *See* ECF No. 25. Because Plaintiff's proposed Second Amended Complaint does not plead plausible causes of action and because it does not address the Court's concerns outlined in its previous Orders, Plaintiff's proposed amendments are futile, and her Motion to Amend should be denied.

## I.    INTRODUCTION

### A.    Procedural Background

Plaintiff filed her Original Complaint on November 16, 2015 against BSC and several misnomers, alleging damages for injuries sustained from a Greenfield IVC Filter device implanted in Plaintiff prior to 2004. ECF No. 1. Plaintiff's Complaint alleged numerous product liability causes of action and sought claims of punitive damages and loss of consortium. Notably,

it argued that her device suffered from the same defect raised by BSC in a 2005 recall. *Id*. Shortly after service of the Complaint, BSC filed a Motion to Dismiss for lack of personal jurisdiction, lack of standing, and failure to state a claim. ECF No. 12.

On August 10, 2016, the Court granted BSC's Motion to Dismiss Plaintiff's Original Complaint without prejudice, finding that Plaintiff failed to: (1) adequately plead a "short and plain statement" pursuant Rule 8, (2) demonstrate a reasonable basis for alleging that she was implanted with a BSC product, and (3) plead sufficient facts demonstrating that Plaintiff's causes of action were not barred by the applicable statute of limitations.[1] The Court permitted Plaintiff thirty days (30) to file an Amended Complaint with the conditions that Plaintiff's Amended Complaint comply with the Rule 8 and 11 standards, which require a "short and plain statement" based on factual support discovered during pre-suit investigation, and plead specific facts demonstrating that her causes of action are not barred by Maryland's three-year statute of limitations. *See* Memorandum Opinion, ECF No. 21, at 7-8.

Plaintiff filed an Amended Complaint on September 8, 2016, ECF No. 23, which asserted seven causes of action against BSC arising from an alleged 1999 Greenfield IVC Filter implantation procedure.[2] *Id*. ¶ 5. Plaintiff's primary allegation was that BSC failed to warn Plaintiff of any "defects or recalls" associated with her device. *Id*. ¶ 17. BSC moved to dismiss Plaintiff's Amended Complaint on September 26, 2016, ECF No. 25, arguing that Plaintiff's Amended Complaint failed to address the Court's concerns raised in its August 10, 2016

---

[1] The Court also dismissed Plaintiff's punitive damages claim without prejudice. And it dismissed Plaintiff's loss of consortium claim with prejudice. Memorandum Opinion, ECF No. 21, at 5-6. The Court did not reach the issue of personal jurisdiction because the Court dismissed the case on 12(b)(6) grounds. *Id.* at 5.

[2] Plaintiff's medical record from September 30, 2016 states that her implantation procedure took place in 1999. Plaintiff's Operative Report, indicates that her implantation procedure may have occurred on March 29, 1995, however, the records are difficult to read due to copy quality.

Memorandum Opinion regarding statute of limitations and product identification and failed to state plausible causes of action upon which relief may be granted. Plaintiff filed Responses to BSC's Motion on October 5, 2016 and October 11, 2016 to which BSC replied on October 24, 2016. This Motion has been fully briefed and is still pending.

On October 25, 2016, Plaintiff filed a Motion for Leave to Amend and Memorandum in Support to add Southern Maryland Hospital ("SMH") as a defendant.[3] ECF No. 32; ECF No. 33. Plaintiff argued that SMH should be added to the Complaint because it "conveniently lost plaintiff's medical records relevant to the Greenfield IVC Filter." ECF No. 32, at 2. And on November 16, 2016, Plaintiff filed a second Motion for Leave to Amend, ECF No. 36, to incorporate certain medical records as part of her proposed Second Amended Complaint. After briefing on the motions, the Court entered an Order on December 21, 2016, granting Plaintiff's second Motion for Leave to Amend (adding medical records) and denying Plaintiff's first Motion for Leave to Amend (attempting to add SMH). ECF No. 39. The Court instructed:

> Plaintiff shall be permitted to file a Second Amended Complaint, along with all medical records and attachments previously submitted, that specifically addresses the deficiencies outlined by the Court in its previous Memorandum Opinion, and adequately alleges a plausible claim that the IVC Filter is, in fact, the cause of the injuries alleged by her. Plaintiff is directed to file a clean copy and a redline version of the Second Amended Complaint, clearly identifying additions or deletions, in accordance with Local Rule 103.6(c).

ECF No. 39, at 2 (emphasis added).

Despite the Court's instruction, Plaintiff did not file a Second Amended Complaint in compliance with the Court's Order and Local Rule 103.6(c). Accordingly, on January 17, 2017,

---

[3] Plaintiff also attempted to file this Second Amended Complaint on October 17, 2016. However, the Court rejected this filing on October 19, 2016, citing that Plaintiff did not have leave to amend her Complaint.

almost a month after the Court's Order, BSC filed a Motion to Dismiss Plaintiff's Amended Complaint. *See* ECF No. 40. On February 2, 2017, Plaintiff responded with an objection to the Motion to Dismiss, ECF No. 42. And Plaintiff filed a third Motion to Amend seeking relief to file a proposed Second Amended Complaint. ECF No. 43.

**B.      New Allegations in Plaintiff's Proposed Second Amended Complaint.**

Plaintiff's revisions to her proposed Second Amended Complaint do not create plausible cases of action. However, these changes include the following:

1.    Plaintiff now asks for greater compensatory and punitive damages. *See, e.g.*, ECF No. 43-2, at ¶ 4.

2.    Plaintiff states: "Southern Maryland Hospital has apparently lost plaintiffs medical records with the relevant identification numbers, however, they somehow managed to have the operative report." *Id.*

3.    Plaintiff alleges additional injuries of "[s]evere anemia, chest, back and neck pains, shortness of breath, [and] mental anguish." *Id.* at ¶ 6.

4.    Plaintiff alleges her Complaint constitutes a "short and plain statement." *Id.* at ¶ 7.

5.    Plaintiff capitulates her claim for solatium.

6.    Plaintiff's Complaint incorporates medical records previously submitted to the Court. For example, Plaintiff includes her September 30, 2016 Office Visit record, ECF No. 43-7, which states the following:

      i.    "<u>[I]t is unlikely that the filter is responsible for [Plaintiff's] pain or anemia</u>, which may be secondary to her multiple abdominal surgeries." *Id.* at 6 (emphasis added).

5

ii. "IVC Filter is in place." *Id*. at 5 (emphasis added). "The patient was reassured that IVC filter struts often protrude outside the lumen, particularly in long standing filters such as hers. There is no inflammation or signs of bleeding on CT." *Id*. at 6 (emphasis added).

iii. "About one week ago, she was hospitalized with chest pain; found to be bronchitis. She currently feels well with no chest pain or leg pain." *Id*. at 2 (emphasis added).

iv. "She was reassured that the filter is very likely scarred in place and is at extremely low risk for migration or fracture." *Id*. at 6 (emphasis added).

v. "Overall, removing this non-retrievable, 17 year old filter would be challenging and high risk and would likely provide little to no benefit; therefore our recommendation is to leave the filter in place." *Id*. at 6 (emphasis added).

In addition to the allegations set forth in the proposed Second Amended Complaint, Plaintiff's Motion to Amend references FDA's 2010 and 2014 notices regarding retrievable IVC Filters. Plaintiff argues that BSC should have warned her in 2010 and 2014 of FDA's notice to doctors regarding risks associated with retrievable IVC filters. More specifically, Plaintiff states that BSC should have told consumers in 2010 that retrievable filters should/may be removed after the threat of pulmonary embolism has passed. ECF No. 43, at 12-13. Plaintiff does not allege that the Greenfield IVC Filter is a retrievable IVC Filter,[4] that she has no risk of

---

[4] In fact, Plaintiff's exhibits state that Plaintiff's BSC filter is a permanent IVC Filter. Pages 2-4 of ECF No. 43-8 are a printout of a Medscape webpage on IVC Filters. While the printed pages appear out of order on the docket, the website clearly categorizes BSC's Greenfield IVC Filter as a permanent, not retrievable, device. *Available at* http://emedicine.medscape.com/article/419796-overview.

pulmonary embolism, or that BSC should have warned her implanting doctors that the device should be removed after the risk of pulmonary embolism has passed.

## II.    LEGAL STANDARD

"[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 483 F.3d 404, 426 (4th Cir. 2006) (quoting *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir. 1986)). Under Rule 15 of the Federal Rules of Civil Procedure, a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Although such motions should be granted liberally, a district court may deny leave if amending the complaint would be futile — that is, 'if the proposed amended complaint fails to satisfy the requirements of the federal rules.'" *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

## III.    ARGUMENT

Plaintiff has not pled plausible causes of action in her proposed Second Amended Complaint. To pass the futility test, the proposed amendments to a complaint must comport with and satisfy the requirements of the federal rules. *Wilson*, 525 F.3d at 376. As part of these requirements, Plaintiff's proposed amendments must support plausible causes of action that would pass a Fed. R. Civ. P. 12(b)(6) challenge. *See Green v. Wells Fargo Bank, NA*, 927 F. Supp. 2d 244, 257 (D. Md. 2013) ("An amendment is futile when the proposed amendment is clearly insufficient on its face, or if the amended claim would still fail to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).") (internal quotations omitted).

Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must construe factual allegations in the light most favorable to the plaintiff. *See Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). Put simply, a complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Here, Plaintiff's proposed amendments do not create plausible causes of action, and as a result, Plaintiff's proposed amendments fail to satisfy the requirements of Rule 8 and 12(b)(6).

**A.    Plaintiff's Allegations are, at best, Speculative.**

Plaintiff's medical records, which are incorporated as exhibits to her proposed Second Amended Complaint, set forth facts leading to a reasonable inference that her causes of action are implausible. These records, unlike the allegations in the body of the actual proposed Second Amended Complaint, establish case-specific facts disclaiming a causal relationship between Plaintiff's injuries and her device:

- "[I]t is unlikely that the filter is responsible for [Plaintiff's] pain or anemia, which may be secondary to her multiple abdominal surgeries." ECF No. 43-7, at 6 (emphasis added).

- "IVC Filter is in place." *Id*. at 5 (emphasis added). "The patient was reassured that IVC filter struts often protrude outside the lumen, particularly in long standing filters such as hers. There is no inflammation or signs of bleeding on CT." *Id.* at 6 (emphasis added).

8

- "About one week ago, <u>she was hospitalized with chest pain; found to be bronchitis.</u> She currently feels well with <u>no chest pain or leg pain</u>." *Id.* at 2 (emphasis added).

- "She was reassured that the filter is very likely scarred in place and is at <u>extremely low risk for migration or fracture</u>." *Id.* at 6 (emphasis added).

- "Overall, <u>removing this non-retrievable, 17 year old filter</u> would be challenging and high risk and <u>would likely provide little to no benefit</u>; therefore our recommendation is to leave the filter in place." *Id.* at 6 (emphasis added).

The Court raised this issue in its December 21, 2016 Order, and required Plaintiff to address these issues in her proposed Second Amended Complaint. ECF No. 39, at 2 ("Plaintiff shall be permitted to file a Second Amended Complaint . . . [that] adequately alleges a plausible claim that the IVC Filter is, in fact, the cause of the injuries alleged by her."). But Plaintiff has not asserted any factual allegations supporting an inference that her Greenfield IVC Filter is the cause of her alleged injuries. Instead, Plaintiff only offers more conclusory and speculative assertions regarding potential causation in her Motion to Amend.[5]

For example, Plaintiff alleges throughout her Motion to Amend that her injuries "can be attributed" to the device and that the device "could cause" her harm. *See, e.g.*, ECF No. 43, at ¶¶ 2, 3, 6, 8. But these speculative allegations cannot push Plaintiff's causes of action from implausible to possible, let alone possible to plausible, given the factual assertions made by her treating physician in her medical records.

At best, Plaintiff's Motion to Amend argues that she has undergone extensive tests to rule out other medical findings. ECF No. 43, at ¶ 3. She concludes that because her doctors have not identified any other cause, it is "very reasonable" that the Greenfield IVC Filter is causing her

---

[5] Plaintiff has not actually added any factual allegations in support of causation to her proposed Second Amended Complaint.

ongoing medical issues. *Id.* Plaintiff does not allege what kind of tests she underwent, the findings of each test, who performed the tests, or which alternative causes have been considered and ruled out. Nor does she assert that any one test concluded that her Greenfield IVC Filter caused any one injury. Rather, she blanketly alleges that her device has caused her "ongoing medical issues." This bald conclusion is insufficient to satisfy the Rule 8 pleading requirement, and is not entitled to a presumption of truth. *Papasan v. Allain,* 478 U.S. 265, 286 (1986).

Because Plaintiff has not come forth with facts supporting a causal relationship between her injuries and her device, the Court can only infer that there is no causal association between Plaintiff's device and her alleged injuries in accordance with her medical records. Without facts supporting a plausible causal association between the Greenfield IVC Filter and Plaintiff's injuries, none of the causes of action alleged in Plaintiff's proposed Second Amended Complaint can satisfy Rule 8 and 12(b)(6). Accordingly, Plaintiff's proposed Amended Complaint is futile, and her request to amend her Complaint should be denied.

**B.      Plaintiff's Causes of Action in her Proposed Second Amended Complaint Lack Facts to Support Elements of Plaintiff's Causes of Action.**

**1.      Strict Liability: Failure to Warn (Count Two)**

Plaintiff's failure to warn cause of action is futile for two reasons. First, Plaintiff fails to allege any facts as to the warnings that accompanied the Greenfield IVC filter she claims to have received. Absent such allegations, her failure to warn cause of action does not satisfy federal pleading standards and should be dismissed.  *See, e.g., Witt v. Howmedica Osteonics Corp.*, 2013 WL 6858395, at *3 (S.D. Fla. Dec. 30, 2013) (where a complaint "does not allege any facts as to the content of any warnings given . . . a count for failure to warn cannot stand"); *Batchelor v. Pfizer, Inc.*, 2013 WL 3873242, at *3 (M.D. Ala. July 25, 2013) (striking the complaint because the court could not "assess the adequacy of the warning to [p]laintiff's physician without

knowing what—if any—warning appeared"); *Tsavaris v. Pfizer, Inc.*, 2016 U.S. Dist. LEXIS 11465, at *8 (S.D. Fla. Feb. 1. 2016) (dismissing a failure to warn claim because the complaint did not "identify the content of the warnings in question or adequately present the alleged defects in the warnings"); *Dilley v. C.R. Bard, Inc.*, 2014 WL 1338877, at *4 (C.D. Cal. Apr. 3, 2014) (dismissing failure to warn claim because the plaintiff had "not identified any warnings that were given with the [product] let alone how they are allegedly deficient"); *Goldin v. Smith & Nephew, Inc.*, 2013 WL 1759575, at *5 (S.D.N.Y. Apr. 24, 2013) (dismissing failure to warn claim because plaintiff did not "identify the allegedly defective warnings, nor d[id] she allege facts in support of her claim that these warnings were, in fact, defective"); *Doe v. AstraZeneca Pharmaceuticals*, LP, 2015 WL 4661814, at *4 (E.D. La. Aug. 5, 2015) (dismissing failure to warn claim because "despite the lengthiness of [p]laintiff's allegations, nowhere in her complaint d[id] she make mention of any specific adverse effect of which [defendant] failed to warn, or assert a proper warning which she contends would have been appropriate"); *Becker v. Smith & Nephew, Inc.*, 2015 WL 268857, at *4 (D.N.J. Jan. 20, 2015) (dismissing failure to warn claim because, inter alia, plaintiff's "complaint [wa]s silent as to whether Defendant gave a warning that did not reveal a particular danger, gave a warning that was untimely, or gave no warning at all"); *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 576 (E.D.N.Y. 2012) (dismissing failure to warn claim because the complaint did "not allege facts identifying how the provided warnings were inadequate").

Second, the learned intermediary doctrine bars Plaintiff's failure to warn cause of action. "Under the learned intermediary doctrine, the manufacturer of medical devices [] has no duty to warn the patient of the risks associated with products used under the supervision of a doctor." *Miller v. Bristol-Myers Squibb Co.*, 121 F. Supp. 2d 831, 838 (D. Md. 2000); *see also Nolan v.*

*Dillon,* 276 A.2d 36, 40 (1971).  "The manufacturer's duty to warn is limited to adequately informing the patients' doctor of any risks associated with the product's use," not the patient herself. *Id.*; *see also Brooks v. Medtronic, Inc.,* 750 F.2d 1227 (4th Cir. 1984).

Here, Plaintiff only alleges that BSC failed to warn her of the risk of perforation, migration, and unreasonably dangerous and defective conditions related to the Greenfield IVC Filter. ECF No. 43-2, at 9, ¶ A ("By failing to give adequate warnings to purchasers and users of the Greenfield Filter, *including Plaintiff*, about its use and risks associated with its use . . . .") (emphasis added).  However, because BSC only owed a duty to warn Plaintiff's doctor of risks associated with her IVC device, this allegation is insufficient to maintain a failure to warn cause of action.

For these same reasons, Plaintiff's failure to warn theory based on the FDA's 2010 and 2014 notices regarding retrievable IVC Filters also fails. Plaintiff argues that BSC failed to warn consumers, like Plaintiff, of the 2010 FDA notice. *See* ECF No. 43, at 13 ("Boston Scientific clearly knew the defective devices since the FDA communication in 2010; yet the company has still yet to inform consumers of their defective products some 17 years later. The plaintiff as well as other consumers. . . ."). But BSC's duty to warn only extends to warning Plaintiff's implanting physician, the learned intermediary, of the risks associated with the device. Further, Plaintiff fails to allege facts showing how this alleged notice for retrievable IVC Filter applies to her permanent Greenfield IVC Filter.

Because Plaintiff alleges that BSC failed to adequately warn her and not her doctor, the learned intermediary, of alleged risks associated with the device, Plaintiff's failure to warn causes of action are barred by the learned intermediary doctrine and should be dismissed.

### 2.    Negligent Misrepresentation (Count Six)

Plaintiff's negligent misrepresentation cause of action likewise fails due to the learned intermediary doctrine. "To state a claim for negligent misrepresentation, a plaintiff must allege a legal duty to provide the plaintiff with accurate information." *Smith v. St. Jude Med. Cardiac Rhythm Mgmt. Div.*, No. CCB-12-1746, 2013 WL 1104427, at *5 (D. Md. Mar. 13, 2013) (citing *Lloyd v. Gen. Motors Corp.,* 397 Md. 108, 136 (2007)). "Under FDA regulation and Maryland law, a device manufacturer owes no duty to provide information or warnings about a device to patients or consumers." *Id.* (citing *Lee v. Baxter Healthcare Corp.*, 721 F. Supp. 89, 94–95 (D. Md. 1989)). "Instead, the duty is owed to the prescribing physician, to allow the physician to provide case specific information about the potential risks and benefits of proposed treatment to his or her patients." *Id.*

Here, Plaintiff's proposed Second Amended Complaint does not articulate a duty owed to Plaintiff with respect to her negligent misrepresentation cause of action. *See generally* ECF No. 43-2. Under Maryland law, medical device manufacturers only owe a legal duty to provide information or warnings about a device to prescribing/implanting physicians. Even if some duty did exist to Plaintiff, which it does not, Plaintiff fails to set forth any factual allegations regarding the misrepresentations that she relied on, the person who made those misrepresentations, and when those misrepresentations were made. Accordingly, Plaintiff's negligent misrepresentation cause of action must be dismissed.

### 3.    Breach of Implied Warranty of Merchantability (Count Five)

Plaintiff has not alleged a viable breach of implied warranty of merchantability theory. "To prevail on a warranty theory in a products liability case, a plaintiff must show not only the existence of a warranty, but also that the warranty was broken and that the breach was the

proximate cause of the harm sustained." *Fellows v. USV Pharmaceutical Corp.*, 502 F. Supp. 297, 299 (D. Md. 1980). "To prove that a warranty of merchantability was broken, a plaintiff must establish that the product was not fit for its ordinary purpose and was defective when it left the manufacturer's control." *Id*. Baldly alleging that a prescription pharmaceutical or medical device product is "unsafe" is insufficient to support a cause of action. *See, e.g.*, *id*.[6]

Here, Plaintiff simply alleges that "Defendant [] implied[ly] warranted that the Greenfield Filter was safe and fit for ordinary and foreseeable [] use as treatment for pulmonary embolism. In actuality, the Greenfield Filter was not safe and fit for such use." ECF No. 43-2, at 7-8. These conclusory facts, alone, cannot serve as a basis for Plaintiff's implied warranty cause of action. Such a theory is untenable for it would impose liability on manufacturers of prescription medical devices when the ultimate consumer suffers any harmful side effect even if the manufacturer gave a legally adequate warning. *See Fellows*, 502 F. Supp. at 299-30. As a result, Plaintiff's implied warranty cause of action fails to state a claim upon which relief may be granted, and should be dismissed.

### 4.      Strict Liability: Design Defect and Manufacturing Defect (Counts Three and Four)

Plaintiff's proposed Second Amended Complaint fails to set forth facts supporting her strict liability design defect and manufacturing defect causes of action. In Maryland, to plead strict liability design defect and/or manufacturing defect causes of action, Plaintiff must allege facts supporting the following elements:

---

[6] *See Fellows*, 502 F. Supp. at 299-30 ("[P]laintiff [] contends [] that doriden was 'unsafe' for normal use and that USV could have manufactured a drug that would have accomplished the same purpose in a safer fashion. The reason why certain drugs are available only by prescription is that their use is not completely safe. Plaintiff's warranty theory, therefore, is untenable for it would impose liability on manufacturers of prescription drugs when the ultimate consumer suffers any harmful side effects, even though the manufacturer has given a legally adequate warning.").

(1) the product was in a defective condition at the time that it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition.

*Phipps v. General Motors Corp.*, 363 A. 2d 955, 958 (Md. Ct. App. 1976).

> ### a.   Plaintiff's Proposed Second Amended Complaint Fails to Articulate a Manufacturing Defect.

Plaintiff's proposed Second Amended Complaint fails to set forth facts supporting her manufacturing defect cause of action. To satisfy the pleading requirements with respect to the first element, the plaintiff needs to allege facts demonstrating that the product did not conform to the manufacturer's specifications. *See Singleton v. Manitowoc Co.*, 727 F. Supp. 217 (D. Md. 1989).

Here, Plaintiff merely states in a conclusory manner that her product "was defectively manufactured or re-manufactured" instead of alleging facts demonstrating how her product deviated from certain manufacturing specifications. ECF No. 43-2, at 8, ¶ 21. Plaintiff does not set forth <u>any facts</u> regarding the manufacturing specifications for the product or how her product deviated from those specifications to create an unintended "manufacturing defect." Because Plaintiff simply recites the elements of the cause of action with no case-specific facts to support her allegations, Plaintiff's allegations are nothing more than bald statements with no factual substance. *See Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 548 (D. Md. 1997) ("[P]laintiffs allege only that defendant is liable for placing into the stream of commerce cigarettes that contain a 'manufacturing flaw.' This allegation amounts to no more than just such a bald statement."). Therefore, Plaintiff's manufacturing defect cause of action should be dismissed.

b.     **Plaintiff does not Articulate a Defect in the Design of the Device.**

Plaintiff's design defect cause of action, similar to Plaintiff's manufacturing defect cause of action, also fails articulate a "defect" that caused her injuries. Plaintiff states, in conclusory fashion, that "[t]he defective aspects of the Greenfield Vena Cava Filter were/are the direct cause . . . and [of] damage to Jeffries' Vena Cava perforation[] and continues to cause health problems." ECF No. 43-2, at 6, ¶ 17. However, she does not allege what aspects of her device rendered her device defectively designed and how those design flaws caused her injuries. Because Plaintiff has not alleged facts articulating a defect in her device that caused her injuries, Plaintiff's design defect cause of action fails and must be dismissed.

### 5.     Negligence and Gross Negligence (Count One)

Plaintiff's negligence cause of action fails for the same reasons that her strict liability design defect, manufacturing defect, and failure to warn causes of action fail. Plaintiff does not allege facts regarding the "defects" in her device's manufacture and design, and Plaintiff fails to allege warnings that were not given to her doctor, the learned intermediary. Plaintiff's negligence cause of action recites generic conclusory statements, and fails to state facts supporting Plaintiff's negligence theories.

### 6.     Punitive Damages

Plaintiff's punitive damages claim relies on conclusory allegations with no factual support demonstrating malice on behalf of BSC. "[F]or a plaintiff to recover punitive damages, the complaint must contain a specific claim for punitive damages and must set forth facts that, if proven true, would entitle the plaintiff to punitive damages." *Bowden v. Caldor, Inc.*, 710 A.2d 267, 276 (1998) (internal quotations omitted). "In a non-intentional tort action, the trier of facts may not award punitive damages unless the plaintiff has established that the defendant's conduct

16

was characterized by evil motive, intent to injure, ill will, or fraud, i.e., 'actual malice.'" *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 652 (1992). "[I]n order for actual malice to be found in a products liability case, regardless of whether the cause of action for compensatory damages is based on negligence or strict liability, the plaintiff must [allege and] prove (1) actual knowledge of the defect on the part of the defendant, and (2) the defendant's conscious or deliberate disregard of the foreseeable harm resulting from the defect." *Id.* at 653. Negligence only will not suffice. *ACandS, Inc. v. Godwin*, 667 A.2d 116, 128 (1995).

Here, Plaintiff's punitive damages claim contains nothing more than conclusory statements regarding BSC's knowledge of "defects." Throughout her proposed Second Amended Complaint, Plaintiff recites that "[BSC] clearly knew sometime after Jeffries implantation . . . that there were issues in the product . . . [and BSC] never notified plaintiff of any recalls nor notified plaintiff that the product should be removed or checked." ECF No. 43-2, at 11, ¶ 2. Plaintiff provides no concrete facts in support of this statement, however, and only characterizes BSC's alleged punitive conduct in generic fashion.

Additionally, Plaintiff only alleges that BSC knew of "defects" <u>after</u> implantation of her device. Yet, in product liability cases, the focus is on the manufacturer's knowledge of the defects or danger <u>at the time</u> the product left the defendant's possession. *Owens-Illinois*, 601 A.2d  653-54 ("The plaintiff must show that the defendant *actually* knew of the defect and of the danger of the product at the time the product left the defendant's possession or control.") "Furthermore, the plaintiff is required to show that, armed with this actual knowledge, *the defendant consciously or deliberately disregarded* the potential harm to consumers," which Plaintiff fails to also do here. *Id.* at 654 (emphasis added). As a result, Plaintiff's punitive damages claim should be dismissed.

17

C.    **Plaintiff's Proposed Amendments Are Futile Because Her Causes of Action Are Barred by the Statute of Limitations.**

1.    **Plaintiff's Tort Causes of Action Are Barred by the Statute of Limitations.**

Despite the Court's explicit directive in its August 10, 2016 Memorandum Opinion, *see* ECF No. 21, at 7, and December 21, 2016 Order, ECF No. at 2, Plaintiff's proposed Second Amended Complaint fails to set forth specific facts demonstrating that her causes of action are not time-barred. In Maryland, products liability causes of action are limited by the standard three-year statute of limitations.[7] Md. Code Ann., Cts. & Jud. Proc. § 5-101 (2016) (setting the general standard unless stated otherwise in another provision); *see also* Md. Code Ann., Cts. & Jud. Proc. § 5-115 (2016) (containing no separate statute of limitations for products liability actions). A court may dismiss an action if it is facially clear from the complaint that a cause of action is barred by the statute of limitations. *See Litz v. Maryland Dep't of Env't*, 76 A.3d 1076, 1086 (2013). Although Maryland applies the discovery rule to its statute of limitations, application of the rule "in a product liability action requires that the statute of limitations should not begin to run until the plaintiff knows or through the exercise of due diligence should know of injury, its probable cause, and either manufacturer wrongdoing or product defect." *Pennwalt Corp. v. Nasios*, 550 A.2d 1155, 1165 (1988) (emphasis added).

The discovery rule "does not require actual knowledge on the part of the plaintiff, but may be satisfied if the plaintiff is on 'inquiry notice.'" *Dual Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1104 (Md. 2004). A plaintiff is on inquiry notice when the plaintiff "possesses 'facts sufficient to cause a reasonable person to investigate further, and . . . . [that] a diligent investigation would have revealed that plaintiffs were victims of . . . the alleged tort." *Id.*

---

[7] Under the "Prayer for Relief" section of Plaintiff's proposed Second Amended Complaint, Plaintiff specifically requests relief pursuant to the laws of the State of Maryland. Accordingly, BSC has analyzed Plaintiff's causes of action under Maryland law.

Inquiry notice may be actual or constructive. *Poffenberger v. Risser*, 431 A.2d 677, 680-81 (Md. 1981). The discovery rule is triggered upon the discovery of an injury, not discovery of the full extent of the injury. *Lockheed Martin Corp.*, 857 A.2d at 1104 ("The discovery rule is premised on the discovery of the harm, <u>even if the aggrieved party may not be aware of the extent of the harm</u>, the source of the tortious conduct, or other intimate details of the tort.") (emphasis added).

Here, Plaintiff alleges she experienced some injuries related to the Greenfield IVC Filter device shortly after implantation of her product. ECF No. 43-2, at 12, ¶ 2 (stating Plaintiff experienced "a number of health issues since the <u>inception</u> of the implantation") (emphasis added); *Id.* at 13, ¶ 1 (stating "she knew something was wrong during the lifetime of the IVC filter," but argues that "nothing was confirmed until 2014"); *see also* ECF No. 43, at ¶¶ 2-3 (stating that she has experienced injuries since "at least" 2015 or "at a minimum" since 2015).

At that time, plaintiff was on inquiry notice of her cause of action. *See Pennwalt Corp.*, 550 A.2d at 1164 ("[W]hen the plaintiff has 'knowledge of circumstances which would cause a reasonable person in the position of the plaintiff[] to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [tort].'") (quoting *O'Hara v. Kovens,* 503 A.2d 1313, 1324 (1986)).  Because she knew of injuries related to her Greenfield IVC Filter since the inception of her device, she should have investigated her injuries to seek facts supporting her cause of action. *Id.* ("In such a situation, should the plaintiff fail to seek out the facts supporting a cause of action, it can fairly be said that the plaintiff has inexcusably slept on [her] rights.").

Additionally, as this Court has already observed, *see* ECF No. 21, at 7, Plaintiff should have known of alleged product defects with the device in 2005 when BSC issued a recall of one of its products. Plaintiff asserts that her device may suffer from a defect publicized in a 2005

recall notice. ECF No. 43-2, at 13 ("It was not until 2015 that Plaintiff then discovered that Boston Scientific may have had a recall on the same filter implanted into her person in 1999."). Had Plaintiff exercised due diligence and performed the requisite investigation, she would have, at the latest, discovered the dangers associated with her Greenfield IVC Filter in 2005. *See Pennwalt Corp.*, 550 A.2d at 1164 (citing *Franzen v. Deere and Co.,* 377 N.W.2d 660 (Iowa 1985). Likewise, in Plaintiff's latest briefing, Plaintiff states that the FDA publicized a notice regarding adverse events associated with retrievable IVC Filters in 2010. ECF No. 43, at 13. Plaintiff argues that BSC clearly knew, and at the very least should have known, its products were defective based on this notice. *Id.* She further argues that BSC should have warned her of this FDA notice. *Id*. However, by the same logic, Plaintiff should have known in 2010 of defects associated with her Greenfield IVC Filter upon FDA issuing its notice, which is outside the three year statute of limitations.

A reasonable person exercising due diligence would have known of their injury, its probable cause, and either manufacturer wrongdoing or product defect by 2005 and at the very latest 2010. Because Plaintiff had all the information she needed to bring her causes of action based on these alleged defects by 2010, at the latest, Plaintiff's  causes of action should be barred by the statute of limitations.

### 2.     Plaintiff's Warranty Causes of Action are Also Barred by the Statute of Limitations.

Plaintiff's proposed Second Amended Complaint fails to plead a cause of action for breach of implied warranty of merchantability because Plaintiff's cause of action is likewise barred by the statute of limitations. Under Maryland law, breach of warranty causes of action must be filed within four years of the breach. Md. Code Ann., Com. Law. § 2-725(1). Further,

> [a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

*Id*. at § 2-725(2) (emphasis added).

Here, Plaintiff's Greenfield IVC filter was tendered, at the latest, in 1999. Plaintiff did not file her case until November 16, 2015. ECF No. 1. Accordingly, at least 16 years have elapsed from the time Plaintiff received the Greenfield IVC filter to the time Plaintiff filed her case. As a result, Plaintiff's breach of implied warranty cause of action is barred by the statute of limitation. *See Miller v. Bristol-Myers Squibb*, 121 F. Supp. 2d 831, 838-39 (D. Md. 2000). To the extent Plaintiff argues that the discovery rule applies to her breach of warranty cause of action, for the same reasons set forth above Plaintiff should have at least known by 2005 that the product she alleges she received was the subject of a safety advisory, and therefore the discovery rule is inapplicable here. Accordingly, Plaintiff's breach of implied warranty of merchantability cause of action is untimely, it should be dismissed with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, Boston Scientific Corporation respectfully requests that this Honorable Court enter an Order denying Plaintiff's Motion to Amend her Complaint.

Dated: February 15, 2017

Respectfully submitted,

SHOOK, HARDY & BACON, LLP

/s/ Cary Silverman

Cary Silverman (No. 15137)
Shook, Hardy & Bacon, LLP
1155 F Street NW, Suite 200
Washington, DC 20004
Telephone:  (202) 662-4859
Facsimile:  (202) 783-4211

Email: csilverman@shb.com

**Attorneys for Defendant**
**Boston Scientific Corporation**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 15, 2017, the foregoing was electronically filed via the Court's

CM/ECF system, and a copy was sent by first-class mail to:

> Monica Jeffries
> 414 Winslow Road
> Oxon Hills, MD 20715

By:  <u>/s/ Cary Silverman</u>

Cary Silverman